## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Special Agent Stacey Bradley of the Federal Bureau of Investigation, depose and state as follows:

I have been employed as a Special Agent of the FBI since 1991. My duties include the investigation of violent crimes, including bank and commercial armed robberies, committed in violation of federal law. I have personally participated in the investigation of the offenses referred to within this Affidavit, and reviewed reports made by other Special Agents of the FBI as well as other law enforcement agencies. I am fully familiar with the facts and circumstances of this investigation.

I make this affidavit in support of search warrants for evidence relating to crimes committed by Corey Hannah and others, specifically: (1) conspiracy to commit robbery in violation of the Hobbs Act, in violation of 18 U.S.C. § 1951; (2) Hobbs Act robbery and bank robbery on August 2, 2006, December 30, 2006 and January 9, 2007, in violation of 18 U.S.C. § 1951 and 2113(a); (3) drug-trafficking in violation of 21 U.S.C. § 841(a)(1); and (4) aiding and abetting. The facilities for which search warrants are sought are the following cellular phones and cellular phone account:

One Motorola I-580 cellular phone, silver and black in color, IMEI # 001700855928690, with SIM card inside # 000824713414300, bearing call number 443-740-1853, in the custody of the Federal Bureau of Investigation;

One Nextel I-880 cellular phone, maroon in color, IMEI # 001701738440710, with the SIM card inside # 000819534895330, bearing call number 443-423-3198, in the custody of the Federal Bureau of Investigation;

One Samsung/Sprint touch screen cellular phone phone, Model #SPH-M800, bearing call number 443-597-9472, in the custody of the Federal Bureau of Investigation;

One black Motorola I930 cellular phone, IMEI # 356254003859777, SIM card # 000824240565300, bearing call number 443-452-5617, in the custody of the Federal Bureau of Investigation;

One silver Motorola I870 cellular phone, SIM card #000808486585310, bearing call number 719-243-3056, in the custody of the Federal Bureau of Investigation;

One Sprint telephone number bearing call number (303) 210-8718 and SIM card 00828453842310;

One silver Sprint pocket personal computer, ESN 05404614717/36466A3D.

Cellular phone account and electronic information, including voice mail, text messages, and electronic mail, in the possession and custody of Sprint Nextel, Inc, relating to the above-referenced cellular devices.

**09-2609 BPG** *thru* **09-2616 BPG**

I make this Affidavit based on matters I ave investigated personally, as well as information I ave received from other law enforcement officers, from civilian witnesses, and from reports and public records. I have not included all of the information known to law enforcement in this Affidavit, but rather only that information relevant to whether there is probable cause to believe that Hannah is a member of an ongoing conspiracy to commit commercial robberies in violation of the Hobbs Act. However, I do not believe that I have omitted any information that would tend to defeat a showing of probable cause.

## FACTS ESTABLISHING PROBABLE CAUSE

Corey Hannah (along with numerous other persons including Troy Henley and others) has been the subject of an ongoing federal criminal investigation for more than two years. In summary, investigation into Hannah's criminal activities has revealed that he is a key member of a large ring of robbers who occasionally refer to themselves as the "Foot Soldiers." The group has committed dozens of armed robberies of banks and commercial establishments during the year 2006 and early 2007. Additionally, there is probable cause to believe that Hannah is a drug-trafficker in west Baltimore City, Maryland.

In summary, the evidence below constitutes probable cause that the defendant helped to plan and participate in a series of armed robberies during 2006 and 2007, including the following robberies:

- On August 2, 2006, the armed robbery of a Wal-Mart store in Ellicott City, Maryland;

- On December 30, 2006, the armed robbery of a Check Point Check Cashing Store in Baltimore, Maryland; and

- On January 7, 2007, the armed robbery of a First Mariner Bank in Severna Park, Maryland. Several members of the bank robbery conspiracy were arrested during that crime as they fled police following being detected escaping the bank robbery. However, cooperating informants familiar with the inner workings of this conspiracy have confirmed that several participants, including Hannah, who acted as a lookout, Maurice Young,[1] who acted as a lookout, and Thomas (Tommy) Hill, who acted as one of the getaway drivers, escaped arrest that day.

On May 14, 2009, a federal grand jury returned an indictment charging Corey Hannah, Davon Steel, Thomas ("Tommy") Hill and Deshon Johnson with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, bank robbery and firearms violations. That Indictment is currently under seal and arrest

---

[1] Maurice Young was indicted for conspiracy and bank robbery due in part to the testimony of CS#1 and CS#2 described herein. Young pled guilty to bank robbery in July 2008.

2

09-2609 BPG thru 09-2616 BPG

warrants are pending for Hannah, Hill and Steele (Johnson has been arrested as of this writing).

Additionally, there is probable cause to believe that Hannah has engaged in the distribution of narcotics during 2007 through at least 2008.

### Information from CS#1

An individual identified herein as CS#1 has provided information to law enforcement concerning Hannah.[2] CS#1 admits to participating personally in armed robberies as part of this group. CS#1 has stated that he/she became part of this group during late 2006, and that he/she participated in several bank robberies with the group. The group included Hannah, as well as other persons identified by CS#1 and previously known to law enforcement. According to CS#1, conspirators would meet before each robbery, would obtain multiple vehicles, some of which were used to actually approach the bank, some of which were used as "switch cars" to be used after the bank getaway car was abandoned, and some of which were actually used as the final getaway car after the robbery. Frequently, stolen cars would be used for these tasks and sometimes were obtained from the Port of Baltimore.

CS#1 reported that he/she participated in a robbery of a First Mariner Bank in Anne Arundel County, Maryland on January 7, 2007. CS#1 stated that members of the group met beforehand at a location in west Baltimore to make arrangements for the robbery. Hannah was present during that meeting. Individual members were assigned specific tasks: several members of the group actually went into the bank, armed with a firearm, to rob the bank. One member stayed in the getaway car immediately outside the bank. Another member stayed across the street from the bank and acted as a lookout person. Other members stayed a greater distance from the bank and acted as lookout persons as well. CS#1 reported that Corey Hannah was a member of this group, planning to commit a bank robbery, and that his role was to act as a lookout person on the perimeter of the First Mariner Bank.

Pursuant to the plan, the group carried out the bank robbery. Three members entered the bank with firearms and wearing masks. Those individuals accosted bank employees and forced the employees to provide them with money. They then left the bank.

Anne Arundel County Police received a report of the robbery and responded. Police identified the escaping bank robbers and arrested four members of the group in the midst of their escape. According to CS#1, several participants, including Hannah and other lookout persons, escaped.

---

[2] CS#1 is an admitted member of a robbery crew that includes Hannah and numerous other persons. CS#1 has provided information in the hope of receiving more lenient treatment with respect to the disposition of any criminal charges CS#1 may face. Thus far, CS#1 has provided information that has led to the successful prosecution and conviction of other members of this group.

Prior to his/her arrest, CS#1 stated that he/she occasionally bought "purple haze," a variety of marijuana, from Hannah.

### Information from CS#2

An individual identified herein as CS#2 also has provided information to law enforcement.[3] CS#2 has admitted to committing many of the same armed robberies, with the same group, as that described by CS#1. CS#2 has described the robberies in a manner substantially identical to the description given by CS#1: in each instance, the group would meet, drive to the bank in multiple getaway and "switch" cars, and would rob the bank by entering the bank armed with weapons and accost bank employees. CS#1 has also confirmed the presence of C#1 (likewise, CS#1 has confirmed that CS#2 was present during robberies).[4] During the robbery, Hannah remained outside the location, acting as a perimeter person and communicating with the robbers and looking out for law enforcement. The robbers then departed, went to another location, and divided the proceeds of the robbery.

### Confidential Informant #3

CS#3 also has provided information to your Affiant concerning robbery activities by Corey Hannah. CS#3 stated that during late 2006, Hannah participated with other persons in two robberies of commercial establishments in the Baltimore area. On August 2, 2006, CS#3 was asked by associates (not Hannah but others) to help in the robbery of the Wal-Mart store in Ellicott City, Maryland. CS#3 met with several individuals, including Hannah, in the vicinity of the Wal-Mart between 11:00 pm and 11:30 pm to discuss the planned robbery. CS#3 did not participate in the robbery personally, but as stated above, armed gunman did in fact rob the Wal-Mart on that night as the store was closing around 11:20 pm.

CS#3 also stated that he/she was approached by associates of Corey Hannah to participate in the armed robbery of the Check-Point Check Cashing Store on December 30, 2006. CS#3 did not verify that Hannah was actually present during the robbery itself. However, CS#3 did state that member of the conspiracy robbed the store, then met at a switch meeting location and returned to the west Baltimore house owned by or controlled by Corey Hannah. At that location, Hannah helped the leading conspirators (including Troy Henley) divide the money.

---

[3] CS#2 is an admitted member of Hannah's robbery crew and has provided information in the hope of receiving more lenient treatment with respect to the disposition of any criminal charges CS#2 may face. Like CS#1, CS#2 has also provided information that has led to the successful prosecution and conviction of members of this robbery conspiracy.

[4] CS#1 and CS#2 did not always participate in the same robberies. Each of them has described one or two robberies in which the other did not participate. The group did not "staff" each robbery in the same way, so the personnel changed from time to time.

CS#3 has actually gone to 3901 Norfolk Avenue with your Affiant, and confirmed that the address, a target of this application, was the west Baltimore house where the coconspirators went to divide the money after the December 30 robbery.

### Confidential Informant #4

CS#4 has provided information to your Affiant including not only robbery and violent activities by Hannah during the 2006-07 time-frame, but also more recent activities by Hannah as well as drug-trafficking activities.

CS#4 verified that he/she has engaged in drug transactions with Hannah no later than summer, 2008. In fact, CS#4 stated that he/she has bought drugs from Hannah over a period of several years, up to and including summer 2008. CS#4 stated that he/she has bought heroin from Hannah a couple times both in the home of the grandmother of Tommy Hill (an associate of Hannah mentioned above) and in a house Hannah owns at 3901 Norfolk avenue. CS#4 has witnessed other drug buys between Hannah and others at both locations. CS#4 advised that the reason Hannah is called "Whirl" (or "Worl") is because Hannah has drug territories everywhere. Specifically, CS#4 stated that Hannah operates in the areas of Norfolk Avenue and Garrison Boulevard, all around the Pimlico area (especially since the departure or death of rivals of Hannah), as well as some sections of the south west and east side of Baltimore City. CS#4 has advised that Hannah makes a lot of money and has heard that Hannah's activities in the area of Pimlico result in an average of $10,000 to $15,000 per week.

CS#4 advised that he has been in a car with Hannah on occasion and stated that Hannah drives with a hand gun on his lap. CS#4 stated that he/she believes that Hannah owns several guns, and that he has seen a couple guns in Hannah's possession.

Your Affiant has been able to corroborate numerous elements of CS#4's information. Specifically:

- Hannah does in fact maintain a residence at 3901 Norfolk Avenue, as discussed below.

- Hannah has two prior convictions for possession with intent to distribute controlled substance from 1998 and 2003.

- Hannah does in fact have a known associate named Tommy Hill. In fact, Tommy Hill has been identified by both CS#1 and CS#2 as having been another getaway driver during the failed First Mariner robbery, and Tommy Hill's fingerprints were recovered from a scrap of paper located in the vicinity of the woods where members of that robbery conspiracy were arrested following the failed robbery of that bank.

- Tommy Hill has spent substantial time with his grandmother at her residence in west

5

Baltimore.

- Consistently with CS#4's information, Tommy Hill also has prior drug convictions and was recently arrested on May 9, 2009, while a search warrant was being executed on the residence of 3811 Fairview Avenue, Baltimore, Maryalnd. Hill was charged with for possession with intent to distribute narcotics relating to a transaction one block away from 3808 Norfolk, Baltimore, Maryland.

### Activities of the Victim Businesses

At all relevant times, the First Mariner Bank referenced above was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation.

At all relevant times, the Wal-Mart and check Point Check Cashing stores were businesses that operated in and affected interstate commerce. Wal-Mart was operated as part of a multi-state chain and sold products manufactured outside the state of Maryland. Check Point conducted financial and money transactions for its customers with persons and entities outside the state and also was owned and operate by out of state interests. Thus, robberies of those locations had the potential to affect and obstruct interstate commerce.

### Corroborating Cell Site Information

Investigators have learned that members of this conspiracy frequently use phones during the crimes to communicate with one another during the robberies (including communications between and among persons responsible for "lookout" duty). Cell tower activity for those phones has permitted law enforcement to place members of this conspiracy at specific robbery areas, on the dates and at times corresponding to robberies. In the case of Corey Hannah, call information for a Nextel cellular phone bearing calls number 703-576-4092 appears to place him at the First Mariner Bank, or at least in the close area, at the time of the January 7, 2007 armed robbery.

The 703-576-4092 phone (hereinafter the 4092 phone) is a Nextel phone subscribed to in the name of "Nextel Media Activations Demo." Your Affiant's understanding is that such phones are often provided by Nextel to distributors to be used as demonstration phones. There is no way from te subscriber information to know who was actually using the phone.

Evidence establishes that the phone was in the possession of, and used by, Hannah during late 2006 and early 2007. Specifically:

- A cellular phone taken from an arrested coconspirator following the January 7, 2007 robbery had an electronic address book which listed the 4092 phone as being the phone of "Worl." Numerous witnesses in this case, including associates of Hannah, have confirmed that Hannah regularly uses the name nickname Worl.

6

- Analysis of call records for the 4092 phone confirms extensive contact between the 4092 phone during late 2006 and early 2007 and family and personal friends of Hannah. These contacts include dozens or hundreds of phone contacts between the 4092 phone and Hannah's mother, sister, and the mother of Hannah's child, as well as other personal attachments.

Your Affiant has reviewed call activity and cell tower activity for the 4092 phone during the December and January 2007 time frames (no records were available for the Wal-Mart robbery in August 2006 so your Affiant does not know what the tower activity for that offense would have shown). According to the cell records, Hannah was in geographic proximity to the Check Point Check Cashing Store on December 30, 2006 at approximately the time leading up to, during and just after the robbery. Following the robbery, Hannah's cell phone activity shows the phone leading from the vicinity of the Check Point store back to the vicinity of Hannah's Norfolk Avenue residence. That information is consistent with the information of CS#4, who stated that following the Check Point robbery, the group returned to Hannah's west Baltimore house to divide the money.

Additionally, analysis of the cell tower site records relating to the 4092 phone demonstrate that the use of that phone (which the evidence shows to be Hannah) was present in the proximity of the First Mariner Bank during the robbery on January 7, 2007. Specifically, the 4092 phone engages in numerous direct connect communications with phones believed to have been in the possession of two other persons who were involved in the robbery (according to CW#1 and CW#2). There are multiple hits between the 4092 phone and a Nextel tower approximately one mile northwest of the bank. Notably, Hannah's phone never hits off that tower or off that area on any other day out of the several months of records that your Affiant reviewed in connection with this case. The contacts on the tower near the bank occur between 1:16 pm and 2:24 pm. The approximate time of the reported bank robbery was 2:20 pm.

In the wake of the robbery, there are continued hits from the 4092 phone off of towers moving progressively north and into Baltimore City. The tower activity is consistent with a person traveling northwest from the bank's location and back into Baltimore City. Later in the day, the 4092 phone hits off of towers in west Baltimore, near the location that your Affiant knows that Hannah maintains his regular residence (i.e. the Norfolk Avenue residence and target residence of this application).

### Guilty Plea

On June 26, 2009, Hannah entered a plea of guilty in the United States District Court for the District of Maryland to one count of bank robbery. Hannah is awaiting sentencing on that charge.

7

09-2609 BPG *thru* 09-2616 BPG

## INFORMATION RELATING TO TARGET CELLULAR TELEPHONES AND ACCOUNT INFORMATION

The following evidence provides probable cause that evidence relating to the crimes described above will be found on the target facilities of this application:

On May 21, 2009, law enforcement officers arrested Corey Hannah pursuant to an arrest warrant issued in connection with a federal indictment charging him with conspiracy, Hobbs Act robbery and firearms offenses (as stated above, Hannah subsequently entered a plea of guilty to one count of that indictment).

Agents located Hannah as he was about to enter his automobile, a Honda pick up truck. The door to the Honda was open at the time of the arrest. Hannah was placed under arrest at that time. Agents conducted a search incident to arrest of Hannah's person and located the following:

One Motorola I-580 cellular phone, silver and black in color, IMEI # 001700855928690, with SIM card inside # 000824713414300, bearing call number 443-740-1853, in the custody of the Federal Bureau of Investigation;

One Nextel I-880 cellular phone, maroon in color, IMEI # 001701738440710, with the SIM card inside # 000819534895330, bearing call number 443-423-3198, in the custody of the Federal Bureau of Investigation; and

One Samsung/Sprint touch screen cellular phone phone, Model #SPH-M800, bearing call number 443-597-9472, in the custody of the Federal Bureau of Investigation.

The Honda pick-up was driven back to the FBI office in Woodlawn, Maryland to be secured (the defendant was the only person responsible for the vehicle at the time, the vehicle was not in the defendant's home neighborhood and the vehicle would have been unattended. Additionally, the defendant consented to having the vehicle driven back to FBI) both to render the vehicle safe and also pending further potential investigation. Per standard FBI procedure, agents conducted an inventory check of the vehicle in order to locate and secure any valuables. Additionally, a canine, trained to conduct sniff tests for the presence of narcotics, was made to conduct such a test of the Honda pick up truck. The canine made a positive alert to the vehicle for the presence of narcotics.

Following the positive alert, agents conducted a complete search of the Honda pick-up truck. Inside the vehicle, agents located the following:

- Police scanners

- Three additional cellular telephones, identified as follows

- A pocket personal computer;

8

- A black knit hat and black gloves;

- Pictures of Hannah and associates handling dogs. The pictures appeared to have been taken in a rural area with facilities for keeping dogs. There were many dogs in the photographs, and many of the animals appeared to have injuries and in some cases bloods stains on their bodies.

- Hidden inside the sole of a shoe found inside the vehicle was a handwritten ledger, apparently showing the deposit and withdraw of money into some kind of account or money pile. The quantities listed showed that at one point, more than $118,000 was maintained inside this account.

- One black Motorola I930 cellular phone, IMEI # 356254003859777, SIM card # 000824240565300, bearing call number 443-452-5617, in the custody of the Federal Bureau of Investigation; and

- One silver Motorola I870 cellular phone, SIM card #000808486585310, bearing call number 719-243-3056, in the custody of the Federal Bureau of Investigation;

- One silver Sprint pocket personal computer, ESN 05404614717/36466A3D. Your Affiant has inspected the device and it appears to be an electronic device designed for storing dates, addresses and information. Additionally, Sprint Nextel has advised your Affiant telephonically that, based on the serial number for the device, that there appears to be a phone number associated with the device. A phone number would suggest the ability to send, receive and store electronic information.

During processing of Hannah relating to his arrest, one of Hannah's cellular phones kept ringing. Your Affiant did not open the phone or examine its contents, but your Affiant did check to see what the incoming number was. The number dialing in was a number your Affiant believes to be used by another member of the robbery conspiracy described herein. That individual is also charged by indictment along with Hannah. As of this writing, that individual is still a fugitive and is being sought pursuant to an arrest warrant.

## PROBABLE CAUSE THAT EVIDENCE WILL BE LOCATED AT THE SUBJECT FACILITIES

Hannah was found with the target cellular phones and related materials at the time he was being placed under arrest in connection with a federal robbery conspiracy charge. Any phone attributable to Hannah, and the electronic information stores on those phones, is of potential evidentiary value because it will allow law enforcement to reconstruct Hannah's movements during the time-frame of the conspiracy, his communications with coconspirator, and identify his associates. Moreover, given the fact that the conspiracy at issue in this case continued for some months and

9

given the sheer number of robberies attributed to it, there is probable cause to believe that cell site information taken from the target phones may link Hannah (and the conspiracy) to additional crimes.

The aforementioned cellular phone equipment remains in the custody of the Federal Bureau of Investigation. Several pieces of information contained in the memory of those items would have evidentiary value in this case, including the call numbers, direct connect numbers and subscriber information. The relevance of the call number and direct connect number are that those numbers can be relayed to cellular service providers who would be able to obtain toll records concerning the phone's call history as well as tower and cell site records for the phone. This information would help identify co-conspirators of the aforementioned robbery conspiracy. Although service providers could run a search for such records based on the electronic serial number for the phone, such an approach would effect a delay and may result in the loss of tower and cell site data (which is only maintained by cellular service providers for a limited period of time).

Other information contained on the phone, SIM card and the corresponding service provider accounts would include electronic communication in the form of text, numeric and voice messages, detailed phone records including all incoming and outgoing calls with cell site information, Direct Connect logs, subscriber information in relation to the service of the referenced cell phones. The phone and SIM card may also contain electronic address lists and recent calls lists, which would help to identify persons who know Hannah as well as persons with whom Hannah may have spoken in the hours leading up to the seizure of the items.

Stored electronic information in the possession of the service provider, including stored voice mail messages, stored text message and stored email messages may also contain information relating to the use of the phone by Hannah.  

Although sometime has passed since the robberies in question, there is still probable cause to believe that evidence will be recovered from the target facilities:

- Call records for the devices may permit investigators to identify other associates of Hannah who were involved in the robberies described herein.

- As discussed above, your Affiant already has reason to believe that one of the recently recovered phones was receiving communications (including possibly test messages and voice mails) from another member of the conspiracy at the time of Hannah's arrest. The fact of ongoing communication and association between Hannah and other members of this conspiracy, at a minimum, constitutes some evidence relating to the conspiracy charges at issue here. Particular communications between Hannah and his accomplices during a time when they were aware of arrest activities could have particular value in determining whether they were exchanging information relating to the investigation or FBI efforts to locate them.

09-2609 BPG thru 09-2616 BPG

- Two members of the group have been charged in the same federal indictment as Hannah, remain at large, and are fugitives. Any communications received by Hannah could be valuable in determining the location of those fugitives.

- In addition to the robbery evidence, one of the confidential sources discussed above has stated that Hannah has engaged in drug-trafficking. That information is corroborated by the police scanners, ledger, and positive canine alert on Hannah's vehicle. Drug-traffickers make frequent use of cellular phones in furtherance of their activities, including maintaining contact with customers and with suppliers. Examination of Hannah's cellular phones, address books, text messages and voice mails may provide information relating to drug-trafficking.

**Conclusion**

For the foregoing reasons, your Affiant respectfully submits that there is probable cause to believe that evidence of the foregoing violations will be found on the target cellular and electronic devices described herein. Furthermore your Affiant has reason to believe that evidence will be found on the associated cellular accounts maintained by Sprint, specifically the items listed in Attachment A with respect to the cellular phones and on Attachment B with respect to the Sprint account.

_____
STACEY BRADLEY, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
This 31st day of July, 2009 at Baltimore, Maryland

_____
Honorable Beth P. Gesner
United States Magistrate Judge
District of Maryland

11

09-2609 BPG *thru* 09-2616 BPG

## Attachment A

Information contained in the memory of the target cellular or electronic device and on its enclosed SIM card or other memory storage device, in the custody of the Federal Bureau of Investigation, including all telephone numbers, other numbers, email addresses, photo images, names, addresses, and other electronic communications or information that is stored in the memory of the target cellular device.

09-2609 BPG *thru* 09-26161 BPG

## Attachment B

All account and stored electronic information, in the possession and custody of Sprint Nextel, including email messages, test messages, voice mail messages, subscriber information, and toll records, relating to the following electronic or cellular devices:

One Motorola I-580 cellular phone, silver and black in color, IMEI # 001700855928690, with SIM card inside # 000824713414300, bearing call number 443-740-1853, in the custody of the Federal Bureau of Investigation;

One Nextel I-880 cellular phone, maroon in color, IMEI # 001701738440710, with the SIM card inside # 000819534895330, bearing call number 443-423-3198, in the custody of the Federal Bureau of Investigation;

One Samsung/Sprint touch screen cellular phone phone, Model #SPH-M800, bearing call number 443-597-9472, in the custody of the Federal Bureau of Investigation;

One black Motorola I930 cellular phone, IMEI # 356254003859777, SIM card # 000824240565300, bearing call number 443-452-5617, in the custody of the Federal Bureau of Investigation;

One silver Motorola I870 cellular phone, SIM card #000808486585310, bearing call number 719-243-3056, in the custody of the Federal Bureau of Investigation;

One Sprint telephone number bearing call number (303) 210-8718 and SIM card 00828453842310;

One silver Sprint pocket personal computer, ESN 05404614717/36466A3D.